**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 13-CR-18-LRR |
| vs. | |
| ADAM ROBERT CHARTIER, | **ORDER** |
| Defendant. | |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND*. . . . . . . . . . *2*

*III. STANDARD OF REVIEW*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*IV. ANALYSIS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A. Basis for Stop*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *B. Length of Stop*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *C. Pat-Down Search*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *D. Search After Canine Alert*. . . . . . . . . . . . . . . . . . . . . . . . . . *11*
    *E. Defendant's Statements*. . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*V. CONCLUSION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

*I. INTRODUCTION*

The matter before the court is Defendant Adam Robert Chartier's Objections ("Objections") (docket no. 36) to United States Chief Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 34), which recommends that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 25).

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On December 7, 2012, at around 11:00 PM, Hiawatha Police Officer Erik Naaktgeboren was on routine patrol when he entered the license plate number of a blue Mercury Grand Marquis into the mobile computer of his car. The records indicated that the registered owner of the vehicle—Terry Stankee—was suspended from driving and did not have SR-22 insurance on file, suggesting that the vehicle may not be registered with the state. Officer Naaktgeboren testified that he could not identify the driver of the vehicle because of the darkness and the misty weather conditions. Based on the records associated with the vehicle, Officer Naaktgeboren pulled over the vehicle. He then approached the vehicle and informed the driver—Aubree Sivola—that the reason he pulled her over was to determine whether the driver of the vehicle was the registered owner. While speaking with Sivola, Officer Officer Naaktgeboren noticed a jug of muriatic acid and a package of airline tubing near Defendant's leg in the passenger seat. Officer Officer Naaktgeboren is a trained clandestine methamphetamine laboratory technician. Based on his training and experience, he suspected these items were to be used to manufacture methamphetamine.

Officer Naaktgeboren asked for driver's licenses from the occupants of the vehicle and identified the driver as Sivola and the passenger as Defendant. Officer Naaktgeboren testified that he had heard through the local DEA task force and narcotics officers that Defendant's name was associated with methamphetamine. Dispatch advised Officer Naaktgeboren that Defendant had a prior conviction for assault with a weapon. Officer Naaktgeboren ordered Sivola to exit the vehicle and then questioned her about where she had been and where she was going. Officer Naaktgeboren then searched Sivola with her consent. Officer Naaktgeboren then approached the passenger side and requested that Defendant exit the vehicle. Officer Naaktgeboren informed Defendant that he was going to walk his canine around the vehicle.

Before performing the canine search, Officer Naaktgeboren noticed something bulky in Defendant's coat pockets. Officer Naaktgeboren requested Defendant's consent to search his pockets, but Defendant did not consent. At the suppression hearing, Officer "Naaktgeboren testified that given the bulges in Defendant's coat, Defendant's prior assault with a weapon charge and his possible connection to narcotics, [Officer] Naaktgeboren was concerned that Defendant might have a weapon." Report and Recommendation at 5. Officer Naaktgeboren then informed Defendant that he was going to pat him down for officer safety and asked Defendant to identify the bulge in his coat. Defendant informed Officer Naaktgeboren that the bulky item was a package of hypodermic needles. Defendant removed the needles and placed them on the back of the Grand Marquis. Officer Naaktgeboren patted down Defendant and found nothing further. Next, Officer Naaktgeboren walked his canine around the vehicle. The canine alerted on the passenger side of the vehicle. Based on this alert, Officer Naaktgeboren searched the vehicle. Officer Naaktgeboren did not locate anything in the vehicle except the muriatic acid and the tubing.

Officer Naaktgeboren then directed Defendant to place his hands on the hood of the police vehicle and informed Defendant that he was going to search him. Defendant again refused to consent to be searched. In response, Officer Naaktgeboren told Defendant that he could either cooperate with the search or be arrested for interference.[1] Officer Naaktgeboren asked Defendant if he had any sharp objects which could stick, stab or poke Officer Naaktgeboren. Defendant replied that he did not. Officer Naaktgeboren then asked Defendant if he had any controlled substances on his person. Defendant replied that he did have something. Officer Naaktgeboren asked what he had. According to Officer Naaktgeboren, Defendant replied "you know what I have." Officer Naaktgeboren then

---

[1] The Iowa Code contains the crime of "Interference with official acts." *See* Iowa Code § 719.1.

3

asked if Defendant had methamphetamine, and Defendant admitted that he did. Officer Naaktgeboren then proceeded to search Defendant and seized three small plastic bags containing methamphetamine, a drill-bit case containing pseudoephedrine pills and a pipe.

Officer Naaktgeboren then placed Defendant in handcuffs and gave him *Miranda* warnings. Defendant subsequently volunteered that he is a methamphetamine user and trades pseudoephedrine pills for methamphetamine. Defendant also described his past involvement with methamphetamine.

### III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

### IV. ANALYSIS

Defendant objects to a number of Judge Scoles's factual findings and conclusions of law. The court first addresses Defendant's objections relating to the basis for the traffic

4

stop. Second, the court turns to Defendant's objections relating to the length of the stop. Third, the court turns to the lawfulness of the initial pat-down. Fourth, the court addresses the lawfulness of the search after the canine alert. Finally, the court addresses Defendant's objections relating to the admissibility of Defendant's statements.

### *A. Basis for Stop*

In his Objections, Defendant argues that Judge Scoles erroneously found that the traffic stop was lawful. Specifically, Defendant contends that "the driver of the automobile [did] not even closely resemble the registered owner of the automobile" and "[f]urther investigation would have lead [sic] [Officer Naaktgeboren] to realize that the driver of the automobile was" not the registered owner and, thus, Officer Naaktgeboren's suspicion giving rise to the stop would have "dissipated immediately." Objections at 2. Defendant further argues that Judge Scoles erroneously found that the darkness and misty weather conditions prevented Officer Naaktgeboren from observing the driver's identity. *Id.*

"The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures by the government." *United States v. Zamora-Lopez*, 685 F.3d 787, 789 (8th Cir. 2012).

> "A traffic stop constitutes a seizure of [a] vehicle's occupants, including any passengers." *United States v. Sanchez*, 572 F.3d 475, 478 (8th Cir. 2009), *citing Brendlin v. California*, 551 U.S. 249, 255-57, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). A traffic stop "must be supported by reasonable suspicion or probable cause." *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008). "A law enforcement officer has reasonable suspicion when the officer is aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *Id.*

5

*United States v. Hollins*, 685 F.3d 703, 705-06 (8th Cir. 2012) (alteration in original). "Whether such suspicions are reasonable is assessed from the point of view of trained law enforcement officers based on the totality of the circumstances known to the officers at the relevant time." *Zamora-Lopez*, 685 F.3d at 790; *see also Hollins*, 685 F.3d at 706 ("'The determination of whether probable cause,' or reasonable suspicion, 'existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time.'" (quoting *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999))). "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citations omitted) (internal quotation marks omitted). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Id.* at 277; *accord United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011).

Upon conducting a de novo review, the court finds that Judge Scoles correctly concluded that Officer Naaktgeboren had a reasonable suspicion that the driver of the vehicle did not have a valid driver's license. Defendant concedes that "an officer is entitled to stop an automobile when [the officer has a reasonable suspicion that] the driver does not have a valid license." Objections at 1. After Officer Naaktgeboren learned that the owner of the vehicle was a suspended driver, it was reasonable for Officer Naaktgeboren to believe the owner of the vehicle was also the driver, regardless of the fact that the driver was not in fact the owner of the vehicle. *See United States v. Phillips*, 679 F.3d 995, 998 (8th Cir. 2012) ("'[T]he validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake . . . was an objectively reasonable one.'" (quoting *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005))). Further, Officer Naaktgeboren

testified that he could not identify the driver, and the video supports his testimony. *See* Squad Camera Video (docket no. 31) at 00:00-45:00. Officer Naaktgeboren's suspicion that the driver of the vehicle was unlicensed was reasonable, articulable and not based on an "unparticularized suspicion or hunch." *Terry v. Ohio*, 392 U.S. 1, 27 (1968) (internal quotation marks omitted). While Defendant argues that Officer Naaktgeboren should have investigated further by pulling up alongside the vehicle, he was not required to investigate in Defendant's preferred manner. When Officer Naaktgeboren pulled over the vehicle, he had a reasonable and articulable suspicion, based on his knowledge that the owner of the vehicle did not have a valid driver's license, that the driver of the vehicle did not have a driver's license. *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (holding that there is no Fourth Amendment violation when "there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered"). Accordingly, the traffic stop was lawful and Officer Naaktgeboren did not violate Defendant's Fourth Amendment rights.

### *B. Length of Stop*

Having determined that Officer Naaktgeboren had a lawful basis for the stop, the court turns to Defendant's argument that Judge Scoles erred in finding that the traffic stop was not unduly prolonged. Specifically, Defendant contends that Judge Scoles erred because Officer Naaktgeboren unduly prolonged the search: (1) when he "removed both subjects from the vehicle . . . even though he had learned that the ultimate reason for the stop had dissipated"; (2) when he "investigate[d] further whether . . . these individuals were involved in . . . methamphetamine related activities by calling in their names to dispatch"; and (3) when "[t]he [c]anine [s]niff . . . occurred . . . several minutes after the initial stop of the vehicle and long after the questioning of both occupants." Objections at 2-3. The crux of Defendant's objection seems to be that Officer Naaktgeboren should not have detained Defendant once his suspicion warranting the stop had dissipated. *See*

*id.* at 3 ("The detention of [Defendant] . . . was certainly unduly prolonged based upon the initial reason for the stop and of the alleged reasonable suspicion.").

"A constitutionally permissible traffic stop can become unlawful . . . 'if it is prolonged beyond the time reasonably required to complete' its purpose." *United States v. Peralez*, 526 F.3d 1115, 11119 (8th Cir. 2008) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Whether the length of a traffic stop is reasonable depends on the specific facts of a case, "and there is no *per se* time limit on all traffic stops." *Id.* (quoting *United States v. Olivera-Mendez*, 484 F.3d 505, 510 (8th Cir. 2007)) (internal quotation marks omitted). Once an officer makes a valid traffic stop, the officer may lawfully ask "for the driver's license, the vehicle's registration, as well as inquir[e] about the occupants' destination, route, and purpose." *United States v. Mendoza*, 677 F.3d 822, 828 (8th Cir. 2012) (quoting *Sanchez*, 417 F.3d at 975) (internal quotation mark omitted). The officer may also "request that the driver sit inside the police car" while performing these routine tasks. *United States v. Pena-Ponce*, 588 F.3d 579, 583-84 (8th Cir. 2009) (citing *United States v. Brown*, 345 F.3d 574, 578 (8th Cir. 2003)). Additionally, when an officer "develops reasonable suspicion that other criminal activity is afoot, the officer may expand the scope of the encounter to address that suspicion." *Peralez*, 526 F.3d at 1120. Whether such reasonable suspicion exists depends on "the totality of the circumstances, in light of the officer's experience." *Sanchez*, 417 F.3d at 975 (quoting *United States v. Carrate*, 122 F.3d 666, 668 (8th Cir. 1997)) (internal quotations omitted).

Here, upon lawfully stopping the vehicle, Officer Naaktgeboren was entitled to perform routine procedures such as checking Sivola's driver's license. Once he approached the vehicle, Officer Naaktgeboren observed muriatic acid and airline tubing. Given his training and experience, Officer Naaktgeboren developed a reasonable suspicion that Sivola and/or Defendant were illegally manufacturing methamphetamine. Thus, while the original stop was justified based on Officer Naaktgeboren's reasonable suspicion that

the driver of the vehicle did not have a valid license and that the vehicle was unregistered, the continued detention was justified by a reasonable suspicion of illegal methamphetamine manufacture. Based on this reasonable suspicion, Officer Naaktgeboren lawfully expanded the scope of the encounter by removing Sivola from the vehicle and questioning her. He then removed Defendant from the vehicle and patted down Defendant for weapons. Finally, Officer Naaktgeboren walked his canine around the vehicle. The entire encounter, including the canine sniff, was completed in less than twenty minutes. *See* Squad Camera Video at 46:00-1169:00. Because Officer Naaktgeboren's actions in removing the occupants of the vehicle, calling in the names of the vehicle's occupants to dispatch and performing the canine sniff were all based on Officer Naaktgeboren's reasonable suspicion that Defendant was involved in the manufacture of methamphetamine, the court finds that the stop was not unduly prolonged.

### C. *Pat-Down Search*

Defendant next objects to Judge Scoles's finding that the pat-down search of Defendant was lawful. Specifically, Defendant contends that "all Officer Naaktgeboren had was a hunch based upon muriatic acid and tubing in the car" and that this hunch does not amount to "a reasonable suspicion that [Defendant] may be armed or involved in the drug trade which would allow a pat down search of [Defendant]." Objections at 3. Defendant further asserts that "Officer Naaktgeboren did not at any point articulate with any specificity any threat to his safety by [Defendant]." *Id*. Defendant argues that because Officer Naaktgeboren did not have reasonable suspicion, he illegally patted down defendant.

An officer conducting a traffic stop may pat down the driver and the passengers if the officer has reasonable suspicion that they could be armed and dangerous. *United States v. Oliver*, 550 F.3d 734, 737 (8th Cir. 2008); *see also Knowles v. Iowa*, 525 U.S. 113, 118 (1998). Whether an officer has reasonable suspicion "is assessed from the point of

9

view of trained law enforcement officers based on the totality of the circumstances known to the officers at the relevant time." *United States v. Zamora-Lopez*, 685 F.3d 787, 790 (8th Cir. 2012); *see also Hollins*, 685 F.3d at 706 ("'The determination of whether probable cause,' or reasonable suspicion, 'existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time.'" (quoting *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999))). "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citation omitted) (internal quotation marks omitted). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Id.* at 277; *accord United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011).

First, an officer is not required to articulate to the subject of a pat-down search for weapons what gives the officer a reasonable suspicion that the subject is armed and dangerous. Rather, the reasonableness of an officer's suspicion is judged "from the point of view of trained law enforcement officers based on the totality of the circumstances known . . . at the relevant time." *Zamora-Lopez*, 685 F.3d at 790. Morever, the court finds that Officer Naaktgeboren's suspicion that Defendant was armed and dangerous was reasonable. Specifically, Officer Naaktgeboren reasonably believed that Defendant was involved in the drug trade based on his observation of muriatic acid and airline tubing near Defendant's feet. *See United States v. Binion*, 570 F.3d 1034, 1039 (8th Cir. 2009) ("An officer's reasonable belief that someone is involved in drug dealing can support a suspicion that the person is armed since weapons are often present incident to the drug business."). Additionally, Officer Naaktgeboren noticed a bulge in Defendant's clothing. *See United States v. Roggeman*, 279 F.3d 573, 579 (8th Cir. 2002) ("When determining whether the

10

totality of the circumstances [gives] rise to reasonable suspicion justifying a protective *Terry* search, . . . this [c]ourt . . . consider[s] a law-enforcement officer's observation of a bulge to be a substantial factor."). Finally, Officer Naaktgeboren was aware that Defendant had a prior conviction of assault with a weapon. *See Stewart*, 631 F.3d at 457 (8th Cir. 2011) (finding a protective search justified when the defendant "had a prior felony conviction and some sort of history involving . . . violent behavior"). In light of Officer Naaktgeboren's belief that Defendant was involved in the drug trade, the bulge in Defendant's coat and Defendant's criminal history, Officer Naaktgeboren had a reasonable suspicion that Defendant was armed and dangerous. Therefore, the pat-down search did not violate Defendant's Fourth Amendment rights.

### D. Search After Canine Alert

Defendant next objects to Judge Scoles's finding that Officer Naaktgeboren's search of Defendant after the canine alert was lawful pursuant to the search-incident-to-arrest doctrine. Specifically, Defendant argues that, to be a valid search incident to arrest, the "arrest has to be for a crime independent of the one for which [a defendant] is being searched." Objections at 3. Defendant also argues that Judge Scoles erroneously found that the search incident to arrest was "for possession of drug paraphernalia" and Officer Naaktgeboren did not have probable cause that Defendant illegally possessed drug paraphernalia. *Id.* at 3-4.

The court, upon conducting a de novo review, finds that Officer Naaktgeboren had probable cause to believe that Defendant illegally possessed a controlled substance because "an alert or indication by a properly trained and reliable drug dog provides probable cause for the arrest and search of a person." *United States v. Winters*, 600 F.3d 963, 967 (8th Cir. 2010). Because Officer Naaktgeboren had probable cause to arrest Defendant for possession of a controlled substance, Officer Naaktgeboren could search Defendant incident to that arrest without any further justification. *See United States v. Robinson*, 414

U.S. 218, 236 (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search . . . ."). Defendant provides no authority, and the court is aware of none, that supports his contention that the "arrest has to be for a crime independent of the one for which [a defendant] is being searched." Objections at 3. Accordingly, the court finds that Officer Naaktgeboren's search of Defendant after the canine alerted on the passenger side of the vehicle did not violate Defendant's Fourth Amendment rights.

### E. *Defendant's Statements*

Finally, Defendant objects to Judge Scoles's finding that Defendant's statement in response to Officer Naaktgeboren's questions should not be suppressed. Specifically, Defendant argues that Officer Naaktgeboren's questions were not prompted by a concern for public safety. At issue is the following exchange, which took place after Officer Naaktgeboren searched the vehicle, but before he had completed his arrest of Defendant:

| | |
|---|---|
| Officer Naaktgeboren: | Do you have anything on you that's going to be sharp, going to stick me, stab me or poke me? |
| Defendant: | No. |
| Officer Naaktgeboren: | Do you have any controlled substances on you? |
| Defendant: | Yes. |
| Officer Naaktgeboren: | What do you have on you? |

12

| | | |
|---|---|---|
| Defendant: | | [inaudible][2] |
| Officer Naaktgeboren: | | Do you have some meth on you? |
| Defendant: | | Yeah. |

Squad Camera Video at 2082:00-2095:00.

Ordinarily, "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant" without first informing the defendant that "[the defendant] has a right to remain silent, that any statement he [or she] does make may be used as evidence against him [or her], and that he [or she] has a right to the presence of an attorney." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). However, "there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence." *New York v. Quarles*, 467 U.S. 649, 655 (1984); *accord United States v. Watters*, 572 F.3d 479, 482 (8th Cir. 2009). "Under the public safety exception, a suspect's answer may be admitted into evidence if it was obtained in response to a question asked in furtherance of public safety and not designed solely to solicit testimonial evidence, even if *Miranda* warnings had not yet been given." *United States v. Everman*, 528 F.3d 570, 572 (8th Cir. 2008); *accord Watters*, 572 F.3d at 482. "[P]rotection of the public safety includes protection of the police officers themselves." *United States v. Liddell*, 517 F.3d 1007, 1009 (8th Cir. 2008).

"The [public safety] exception does not depend upon the questioning officers' subjective motivation. Rather, it is judged under an objective standard and 'applies when police officers ask questions reasonably prompted by a concern for the public safety.'" *Everman*, 528 F.3d at 572 (quoting *Liddell*, 517 F.3d at 1009); *see also Quarles*, 467 U.S. at 656 (noting that "the availability of [the public safety] exception does not depend upon

---

[2] While not audible on the Squad Camera Video, Officer Naaktgeboren informed the court at the suppression hearing that "Defendant replied 'you know what I have.'" Report and Recommendation at 6.

13

the motivation of the individual officers involved"). "Because this is an objective standard, and because police officers must react spontaneously to situations posing a threat to public safety, the public safety exception does not turn on the specific form of questions asked." *Liddell*, 517 F.3d at 1009 n.2.

The court finds that officer Officer Naaktgeboren asked whether Defendant had anything that would stick, stab or poke him in furtherance of public safety. However, the court finds that when Officer Naaktgeboren asked Defendant whether he had any controlled substances on him, this was not a question "reasonably prompted by a concern for the public safety," but was instead "designed solely to solicit testimonial evidence." *Everman*, 528 F.3d at 572. The Eighth Circuit recognizes special safety concerns related to methamphetamine use and manufacture. *See, e.g.*, *United States v. Luker*, 395 F.3d 830, 832-34 (8th Cir. 2005) (holding that when officers were concerned about a defendant's methamphetamine use, the public safety exception applied when they asked the defendant if there was anything in the defendant's vehicle that should not be there or that the officers should know about); *United States v. Ellefson*, 419 F.3d 859, 866 n.4 (8th Cir. 2005) ("[T]he manufacture of methamphetamine is an inherently dangerous activity that creates substantial risks to public health and safety."). However, the Eighth Circuit has never gone so far as to allow an officer to question a suspect specifically about whether the suspect has controlled substances under the public safety exception to the *Miranda* rule. *See, e.g.*, *Liddell*, 517 F.3d at 1008-10 (holding that the public safety exception applied when officers asked if there is "anything else in [defendant's *vehicle* the officers] need[ed] to know about" (emphasis added)); *Luker*, 395 F.3d at 832-34 (holding that the public safety exception applied when an officer asked defendant if there was "anything in [defendant's] *vehicle* that shouldn't be there or that [the officers] should know about" (emphasis added)). The searches in *Liddell* and *Luker* were justified by the officers' concerns for unknown drug paraphernalia or weapons that could harm the officers when

14

they searched a vehicle. Additionally, the questions in *Liddell* and *Luker* were not aimed specifically at controlled substances. Rather, the questions were broad enough to cover items which could have been dangerous to police officers. There were no such concerns here, and the question posed by Officer Naaktgeboren was aimed solely at whether Defendant had controlled substances on his person. It was not unreasonable for Officer Naaktgeboren to fear for his safety when he first began asking questions: Officer Naaktgeboren's previous pat-down of Defendant before the canine sniff yielded hypodermic needles on Defendant's person. However, any fear for officer safety was dispelled when Officer Naaktgeboren asked Defendant if he had anything which would stick, stab or poke Officer Naaktgeboren, and Defendant answered that he did not have items which could injure Officer Naaktgeboren. The court finds that the subsequent question about whether Defendant had controlled substances was designed solely to solicit testimonial evidence. Therefore, Defendant's response to the question about whether Defendant had controlled substances shall be suppressed. Further, Defendant's response to Officer Naaktgeboren's question about whether the substance was methamphetamine shall be suppressed for the same reasons.

While these statements shall be suppressed, the court notes that Officer Naaktgeboren would have discovered the methamphetamine, pills and pipe during the search regardless of Defendant's statements. Evidence discovered as a fruit of illegally discovered evidence is still admissible if it would have been inevitably discovered. *See Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013). Furthermore, the court notes that suppression of physical evidence is not an appropriate remedy for a *Miranda* violation. *United States v. Beasley*, 688 F.3d 523, 531 (8th Cir. 2012) ("Even if we assume a *Miranda* violation, suppression of the resulting physical evidence is not the appropriate remedy."). Here, Officer Naaktgeboren was about to search Defendant. Pursuant to that search, he would have found the methamphetamine,

pills and pipe. Accordingly, only Defendant's statements shall be suppressed. The physical evidence obtained during the search of Defendant shall not be suppressed as a fruit of the *Miranda* violation.

## V. CONCLUSION

In light of the foregoing, the court **HEREBY ORDERS**:

(1) The Objections (docket no. 39) are **OVERRULED IN PART** and **SUSTAINED IN PART**;

(2) The Report and Recommendation (docket no. 34) is **ADOPTED IN PART** and **MODIFIED IN PART**; and

(3) The Motion (docket no. 25) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

**DATED** this 21st day of October, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA